1

2 ____ FILED ____ ENTERED
  ____ LODGED ____ RECEIVED

3 **AUG 19 2004**

4 AT SEATTLE
  CLERK U.S. DISTRICT COURT
  WESTERN DISTRICT OF WASHINGTON

5 BY _____ DEPUTY

04-MJ-00475-CMP

6

7 UNITED STATES DISTRICT COURT
  WESTERN DISTRICT OF WASHINGTON

8 AT SEATTLE

9 UNITED STATES OF AMERICA,                )    MAGISTRATE'S DOCKET NO.
                                           )    CASE NO. O 4- 475 M
10         Plaintiff,                       )
                                           )    COMPLAINT FOR VIOLATION
11     v.                                   )
                                           )    18 U.S.C. §§ 844(i) and 2
12 MIRZA M. AKRAM,                          )
                                           )
13         Defendant.                       )
   _____    )

14

15 Before United States Magistrate Monica J. Benton, Seattle, Washington.

16 The undersigned complainant being duly sworn states:

17                                  COUNT 1
                                   (Arson)
18

19     On or about July 9, 2004, at Everett, Washington, in the Western District of

20 Washington, MIRZA M. AKRAM maliciously damaged and attempted to damage and

21 destroy, by means of fire and explosive materials, a building, Continental Spices

22 Convenience Store, located at 315 East Casino Road, Everett, Washington, used in

23 interstate and foreign commerce and in activity affecting interstate and foreign

24 commerce.

25     All in violation of Title 18, United States Code, Sections 844(i) and 2.

26     And the complainant states that this Complaint is based on the following

27 information:

28

COMPLAINT/AKRAM — 1

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101
(206) 553-7970

1        I, CHRISTOPHER TAYLOR, being first duly sworn on oath, do hereby depose
2   and say:

3        1.   I am a Special Agent with the United States Department of Justice,
4   Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). I have been employed
5   in this capacity since January of 2001. In addition to being a graduate of the Federal
6   Law Enforcement Training Center and the ATF National Academy, I am a Certified
7   Explosives Specialist with the ATF and have received specialized training in the field of
8   arson and explosives, as well as numerous additional hours of classroom lecture
9   regarding the Federal firearm statutes. I have conducted numerous criminal
10  investigations involving violations of Federal firearms, explosives, arson and drug
11  statutes. I have in excess of eight (8) years experience as a Federal Agent. In addition,
12  I was previously employed as a Special Agent for the U.S. Customs Service and the
13  Immigration and Naturalization Service. The information contained in this affidavit is
14  based on my investigation and where noted, information provided to me by other law
15  enforcement officers.

16       2.   This affidavit is made in support of an arrest warrant for MIRZA M.
17  AKRAM for one count of arson in violation of Title 18, United States Code, Section
18  844(i).

19       3.   This affidavit is also made in support of an application for a search
20  warrant to search the residence of MIRZA M. AKRAM, located at 9324 Seventh
21  Avenue Southeast, Everett, Washington and the trailer located on the above listed
22  property belonging to MIRZA M. AKRAM for evidence of arson in violation of
23  Title 18, United States Code, Section 844(i).

24       4.   On or about July 9, 2004 at approximately 4:08 A.M., Everett Police and
25  Fire Departments responded to a fire located at 315 East Casino Road, Everett, WA
26  which contained the Continental Spices Convenience Store, a Pakistani owned, Halal
27  grocery store. I was contacted by the Everett Police Department at approximately 5:38
28  A.M. and responded at approximately 8:30 A.M. to examine the scene.

UNITED STATES ATTORNEY
601 Union Street, Suite 5100
Seattle, Washington 98101
(206) 553-7970

5.     On or about July 9, 2004 at approximately 8:45 A.M., I examined the scene of the fire with an Everett Police Detective. The Everett Police Detective collected an unburned red blitz style gasoline container that appeared to have approximately one inch of gasoline inside. The gasoline can was located in the front portion of the store, in close proximity to the seat of the fire. There were four Christian style crosses written in white spay paint on the doors of several freezers. Also written on a wall inside the store were the words "F U ARAB". Fire Department personnel informed me that the front door of the store was unlocked upon their arrival and the front window was intact. The cause of the fire was determined to have been arson.

6.     On July 10, 2004, I interviewed MIRZA M. AKRAM, the manager of the Continental Spices Convenience Store who informed me of the following:

a.     Since November 2002, MIRZA M. AKRAM has been making monthly payments to Sheikh Zahid, owner of Z.A. Trading Corporation to acquire ownership of Continental Spices Convenience Store. The payments totaled $1,000/month and MIRZA M. AKRAM stated that he had approximately 12 to18 months left in payments before he would actually own the store. The rent for the store was paid each month to Windermere Realty located at 7100 Evergreen Way in Everett, WA. The monthly rent was $1,206.

b     When I asked about insurance coverage, MIRZA M. AKRAM stated that he knew Z.A. Trading Corporation has an insurance policy with Farmers Insurance that covered any loss dealing with the store. MIRZA M. AKRAM did not know the name of the insurance agent or the policy number. MIRZA M. AKRAM said that Shazad Azeem or Ahmed Sheikh would have more information about the insurance policy.

c.     When I asked about bank accounts, MIRZA M. AKRAM stated that Z.A. Trading Corporation had a business account with Wells Fargo Bank. MIRZA M. AKRAM also stated that the bank accounts for his store, the Continental Spices Store in Seattle and the Z.A. Trading Corporation were the same account. MIRZA M. AKRAM

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  stated that he did not have a separate account for his store. MIRZA M. AKRAM said

2  that Shazad Azeem or Ahmed Sheikh would have more information about the bank

3  accounts.

4          d.   When I asked about an alarm system within his store, MIRZA M.

5  AKRAM stated that it might be Edison Security or ADT. I asked if there was a keypad

6  that had to be activated when he opened or closed the store. MIRZA M. AKRAM

7  stated that there was a keypad in the rear of the store that had to be activated when he

8  opened the store and when he left the store at night. MIRZA M. AKRAM said that

9  Shazad Azeem or Ahmed Sheikh would have more information about the alarm system.

10          e.   When I asked about the night of July 8, 2004, MIRZA M. AKRAM

11  stated that he closed the store at approximately 10 P.M. I then asked if he specifically

12  remembered locking the door and MIRZA M. AKRAM replied, "Yes". I asked why

13  the fire department would have found the door to have been unlocked and MIRZA M.

14  AKRAM replied, "He must have gone through the window then left through the door".

15  I then asked why he would think that about the window and MIRZA M. AKRAM

16  replied that the firemen told him the window was broke when he arrived there that

17  night.

18          f.   I asked MIRZA M. AKRAM if he had activated the alarm system on

19  the evening of July 8, 2004, to which he replied, "No, I did not, I wanted to go back to

20  the store to take some meat there later that night, but I got tired and decided not to go

21  back. I never had any problems there; the seven-eleven is so close". I asked if he had

22  ever forgot to activate the alarm, he replied, "yes, a couple of times, you know like I

23  said, the seven-eleven was so close I never had any problems".

24          g.   MIRZA M. AKRAM then told me that at approximately 4:21 A.M.

25  on July 9, 2004, Shazad Azeem called him on his cellular telephone and informed him

26  of the fire. MIRZA M. AKRAM believed that Shazad Sheikh had been notified about

27  the fire by ADT Alarm Company. MIRZA M. AKRAM responded to the scene within

28  five minutes of being notified of the fire.

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    h. MIRZA M. AKRAM then told me that approximately one week after

2 the decapitation of Nicholas Berg in Iraq, two white males came into his store and

3 were making racial insults and were being mean to him. The two people did not make

4 any threats against him and MIRZA M. AKRAM did not file a police report.

5    i. MIRZA M. AKRAM told me that he resided at 9324 7th Avenue

6 Southeast, Everett, Washington.

7   7. On August 12, 2004 I interviewed Shazad Azeem, Vice President of Z.A.

8 Trading Corporation regarding the arson at the Continental Spices Convenience Store.

9 During the interview, Azeem informed me that the Continental Spices Convenience

10 Store is legally owned by Z.A. Trading Corporation, which is "DBA" for Continental

11 Spices. Azeem's brother-in-law, Sheikh M. Zahid, owns Z.A. TRADING

12 CORPORATION.  Z.A. Trading Corporation is a wholesale distributor of Pakistani

13 Spices, Foods and Wares and distributes these items throughout the Greater Seattle

14 area. Azeem also informed me that the Continental Spices Convenience Store has been

15 sold to MIRZA M. AKRAM, who is in the process of making payments to Sheikh

16 Zahid. Although Sheikh Zahid is still currently the legal owner of Continental Spices

17 Convenience Store, MIRZA M. AKRAM actually operates the store and serves "in

18 fact" as the owner. Azeem also noted that the "normal" gross revenues for the Everett

19 store has always been approximately $9,000 - $13,000 per month.

20   8. Azeem also informed me that on the night of July 8, 2004 MIRZA M.

21 AKRAM contacted Azeem regarding a meat delivery for the store in Everett. MIRZA

22 M. AKRAM told Azeem that he would come to the store to pick up some Halal meat to

23 sell in the Everett store. Azeem noted that this was common because MIRZA M.

24 AKRAM did not have the machines necessary to cut the meat inside of his store in

25 Everett.  AKRAM came to Azeem's home at approximately 9:30 P.M. and picked up

26 frozen meat and loaded it into the trunk of his car. MIRZA M. AKRAM then told

27 Azeem that he was going back to the store to put the meat away. Later that same

28 evening at approximately 4:20 A.M., Azeem was called by ADT security regarding the

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   Continental Spices Convenience Store and Azeem immediately thought it was in

2   regards to the Aurora Avenue Store. The operator informed him that there was a fire at

3   the Everett store. Azeem called MIRZA M. AKRAM and then called Ahmed Sheikh

4   and notified them of the situation. Azeem and Ahmed Sheikh then went to the Everett

5   store to join MIRZA M. AKRAM. Upon arrival at the store, MIRZA M. AKRAM told

6   Azeem about a problem that he had with two white people approximately two weeks

7   ago and acted as if he had told Azeem this before. Azeem stated to MIRZA M.

8   AKRAM that he had never told him this before this date. MIRZA M. AKRAM then

9   asked Azeem to take the meat back from the trunk of his vehicle. Azeem was surprised

10  that MIRZA M. AKRAM never delivered the Halal meat to his store in Everett.

11      9.      On August 13, 2004 I interviewed Ahmed Sheikh, Executive Operations

12  Manager of Z.A. Trading Corporation regarding the arson at the Continental Spices

13  Convenience Store. During the interview, Sheikh stated that beginning on

14  November 18, 2002, MIRZA M. AKRAM has been making monthly payments to Sheikh

15  Zahid, Ahmed Sheikh's brother and owner of Z.A. Trading Corporation to acquire

16  ownership of Continental Spices Convenience Store. The down payment was $40,000 at

17  the time of the sale and monthly payments of $640 until December of 2004. In December,

18  MIRZA M. AKRAM would be responsible to pay the balance of the loan, or they would

19  set up a new payment plan. Only after all payments had been made to Sheikh Zahid

20  would MIRZA M. AKRAM actually own the store. Sheikh then stated that he had been

21  associated with Z.A. Trading Corporation since 1997 and began running operations in

22  2000. Sheikh also noted that since 1997, the "normal" gross revenues for the Everett

23  store has always been approximately $10,000 - $14,000 per month.

24      10.    As part of my investigation I obtained telephone toll records for MIRZA

25  M. AKRAM'S cellular telephone.  My review of those records reveals that between the

26  hours of 12:14 a.m. and 4:01 a.m. on July 9, 2004, the day of the arson, there were

27  eleven telephone calls between MIRZA M. ARKRAM'S cellular phone and a phone

28  registered to NAVEED MUHAMMAD KHAN. The fire was reported at 4:08 A.M. on

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  July 9, 2004.

2      11.    On August 17, 2004 at approximately 11 A.M., an Everett Police

3  Detective and I interviewed NAVEED MUHAMMAD KHAN, a friend and close

4  associate of MIRZA M. AKRAM. During the interview, KHAN stated that he met

5  MIRZA M. AKRAM in June of 2003 through a mutual friend. They soon became good

6  friends and began to "hang out" some nights and on weekends. Approximately three

7  weeks before the arson at the Continental Spices Convenience Store, MIRZA M.

8  AKRAM stated to KHAN, "I should burn this store or sell it, I am losing money every

9  day. I need your help". KHAN repeatedly tried to talk MIRZA M. AKRAM into

10  selling the store but he would not listen. MIRZA M. AKRAM was not able to find a

11  buyer and became intent on burning the store to reap the financial benefit the insurance

12  would provide. MIRZA M. AKRAM offered KHAN $2,000 to burn the store for him.

13  KHAN refused to take the money because it made him feel like more of a criminal and

14  agreed to help out of friendship.

15      12.    On July 4, 2004, KHAN and MIRZA M. AKRAM were together for the

16  fourth of July weekend, MIRZA M. AKRAM stated that they should burn the store that

17  evening, but KHAN talked him out of it. KHAN argued that there were too many

18  people looking for fires on such a weekend and that it would definitely be noticed much

19  quicker than usual. MIRZA M. AKRAM told KHAN to pick up a rental car from

20  Bremerton and drive it up to MIRZA M. AKRAM's home on Thursday, July 8, 2004,

21  so they could burn the store that evening. KHAN then returned to Bremerton Navy

22  Base.

23      13.    On July 8, 2004, KHAN rented a red ford vehicle from Enterprise in

24  Bremerton, WA and drove to MIRZA M. AKRAM's home located at 9324 Seventh

25  Avenue Southeast, Everett, Washington. Upon his arrival, MIRZA M. AKRAM

26  informed him that he had already poured gasoline inside the store and lit some incense

27  above the gasoline under the belief that the incense would burn down, then ignite the

28  gasoline. While at the house, KHAN was informed by MIRZA M. AKRAM that he

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  had already removed financial documents from the store and then showed them to

2  KHAN. MIRZA M. AKRAM informed KHAN that the records were removed so that

3  MIRZA M. AKRAM would not get "misled by creditors" when they were asking for

4  payments after the fire. MIRZA M. AKRAM then asked KHAN to drive by the store

5  and make sure the fire was burning, and if it was not, go into the store, knock over the

6  cash register, and start the fire. MIRZA M. AKRAM stated that he had left the store

7  unlocked and did not activate the alarm. MIRZA M. AKRAM then gave KHAN a blue

8  jacket with a hood to wear while in the area of the store. KHAN went to the

9  Continental Spices Convenience Store and noticed that it was not on fire. KHAN then

10  talked to MIRZA M. AKRAM via cell phone and informed him that the store was not

11  on fire. MIRZA M. AKRAM told KHAN that he would meet him at the store to put

12  some meat that he had in the trunk of his car inside the store so that he could claim it

13  on the insurance loss. KHAN stated that he waited for MIRZA M. AKRAM for quite a

14  while but never saw him drop off the meat inside the store. KHAN stated that he drove

15  around for several hours and might not have noticed if MIRZA M. AKRAM returned

16  to the store. KHAN waited until it appeared that the area was quiet and at

17  approximately 4:00 A.M., KHAN entered the store and immediately noticed the smell

18  of gasoline. KHAN attempted to knock over the cash register, then ran to the front of

19  the store where there was a red gasoline container on the floor. KHAN told me that this

20  container was similar to other gasoline containers KHAN had previously observed

21  while inside MIRZA M. AKRAM's home and trailer. KHAN noticed that gasoline was

22  already spilled on the floor and numerous other items in the immediate vicinity, so

23  KHAN grabbed the incense and dropped it into the puddle of gasoline on the floor. The

24  fire immediately ignited with a "woosh" sound and caught KHAN's lower pant leg on

25  fire. KHAN put out the fire on his leg and ran from the store. As KHAN drove away

26  from the store, he called MIRZA M. AKRAM and told him that the store was on fire.

27  MIRZA M. AKRAM then told KHAN not to call him and just to go back to

28  Bremerton. KHAN returned to base with the smell of gasoline on his pants, stopping

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   only in Gig Harbor to throw the blue jacket away. When asked about the spray painted

2   crosses and racial slurs written on the walls of the store, KHAN stated that MIRZA M.

3   AKRAM probably wrote them when he spilled the gasoline but he did not notice them

4   when he went inside the store because he was so nervous.

5        14.    On or about August 11, 2004, KHAN drove to MIRZA M. AKRAM's

6   home in Everett, WA to visit. MIRZA M. AKRAM answered the door and

7   immediately shut the door in KHAN's face. KHAN then knocked again and MIRZA

8   M. AKRAM answered once again. MIRZA M. AKRAM told him never to come to his

9   house and not to call him. MIRZA M. AKRAM told KHAN that there was an

10   investigation going on and asked if the police had contacted him regarding the fire.

11   KHAN told him that the police had not contacted him. MIRZA M. AKRAM then told

12   KHAN that if he talked to the police, "you (KHAN) will not be breathing tomorrow".

13   KHAN understood this by the tone and MIRZA M. AKRAM's expression that he

14   would be killed if he talked to authorities. KHAN left the area and hasn't seen or

15   spoke to MIRZA M. AKRAM since then.

16        15.    On August 17, 2004 I was informed by an ATF Forensic Auditor that

17   financial records for the Continental Spices Convenience Store located at 315 East

18   Casino Road, Everett, WA show gross sales averaging $6,800 - $11,000 month for the

19   fiscal year 2003. The most recent month's records are for June 1 through June 30,

20   2004, which is the month prior to the fire. Those records show gross sales as less than

21   $3,000.

22        16.    On August 17, 2004 I spoke to the Farmers Insurance Investigator who

23   informed me that MIRZA M. AKRAM was not an insured party on the insurance

24   policy. The Insurance Investigator also informed me of the following regarding the

25   insurance agent and the insurance policy in effect at the time of the fire at Continental

26   Spices Convenience Store:

27

28

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101
(206) 553-7970

1          a.     The agent stated that Farmers insures ZA Trading, which is a

2 company that has three different locations doing business as Continental Spices. The

3 fire location is at 315 E Casino Road in Everett Washington. This business is a

4 restaurant deli. He insures Continental Spice at 7818 Aurora Ave North in Seattle

5 Washing, which is a grocery store and Continental Spice at 25 South Hanford in Seattle

6 Washington which is a warehouse. The agent has insured ZA trading since June 15,

7 1997. The agent believed Shazad Azeem to be the owner of the business, but after

8 meeting with both Azeem and Ahmed Shiekh, the agent now believes Ahmed Sheikh to

9 be the owner. The agent only dealt with Azeem regarding the policies. They came to

10 the agent for insurance as their grocery store was just down the street from the agent's

11 previous business address, which was on Aurora Avenue North.

12          b.     The agent first wrote all three businesses under one account and

13 policy number, back in 1997. The agent stated that they were current on their

14 payments for the most part. They were late on a few occasions but the real problems

15 with their polices started when the insured changed bank accounts, which affected his

16 E-Z pay account with Farmers. The policies went out of force on July 26, 2003 for

17 non-payment. This was because the insured changed bank accounts so the E-Z

18 payments where never made. The insured advised the agent of the bank account

19 change and the agent attempted to notify commercial underwriting but it never got

20 straightened out. The agent sent a memo to commercial underwriting on November 18,

21 2003 with information regarding the insured new bank account and requested that E-Z

22 pay be drafted out of that account. During this time, Farmers sent the insured a $910

23 refund check on November 19, 2003. The new E-Z pay was never set up so the

24 insured's policies remained out of force until February of 2004. The agent stated that

25 insured knew he was out of force become he received his cancellations notices and that

26 the insured was waiting until he could come up with the money to make his policy

27 current.

28

UNITED STATES ATTORNEY
601 Union Street, Suite 5100
Seattle, Washington 98101
(206) 553-7970

1          c.      On February 19, 2004, the agent finally re wrote the polices as

2   new business. He attempted to reinstate the policies but could not because they had

3   been out of force for over 60 days.  The agent believed he wrote all three locations but

4   he had not.  He did not re write the 315 East Casino (fire location) policy.  The agent

5   stated it was his mistake and that he and the insured thought all three locations had

6   policies in force.  The agent stated that the mistake was made because the 315 East

7   Casino Road location needed to been written differently.  The agent created paper

8   policies for the other two locations and assumed he did the same for the 315 East

9   Casino locations because that is how he wrote the policies in the past.  The agent

10  received a fax on March 15, 2004 that stated he needed to write the policies as new

11  business.

12         d.      The agent wrote the polices as new business and when he received

13  the policies in June of 2004 he called the insured and asked him to come to the office to

14  sign the polices.  The agent stated he called the insured on two occasions in late June

15  but he does not know the exact dates.  The agent got in touch with the insured in early

16  July and advised him that the policies were ready.  The insured called the agent and

17  advised him would come to the office to sign the paperwork, either on the July 7, 2004

18  or July 8, 2004.  The agent is not sure of the exact date of the phone call but he knows

19  the insured called before he came in on July 8, 2004.

20         e.      Shahzad Azeem came to the agent's office on July 8, 2004 in the

21  afternoon to sign the polices.  The insured noticed that the 315 East Casino locations

22  was not listed and wanted it to be added.  The agent stated that he mistakenly did not

23  add that location but advised the insured that he could do so electronically and it would

24  only take a few minutes.  The insured stated he could not wait and he left.  The agent

25  continued with the paperwork for 315 East Casino Road and sent the paperwork to

26  commercial underwriting without the insured's signature and without receiving any

27  money from the insured.  The agent stated that this is not out of the ordinary for him.

28  He stated he does that regularly for commercial buildings.

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101
(206) 553-7970

1          f.      On July 9, 2004 at approximately 9:30 A.M., the insured,

2   Shazad Azeem and insured, Ahmed Sheikh came to the agent's office. It was at this

3   time that the agent realized that Ahmed was the owner of ZA trading by the way

4   Shazad interacted with Ahmed. Shazad and Ahmed did not tell the agent that a fire

5   had occurred at 315 East Casino Road five hours earlier. The agent presented an

6   Insurance proposal for the insured that was dated July 8, 2004. The agent also

7   submitted a Subscription Agreement that insured, Shazad Azeem signed and dated.

8   The date reads July 9, 2004. The agent also presented a memo that the agent signed and

9   dated on July 9, 2004 with the time listed as 9:40 A.M. The insured, Shazad Azeem

10  signed the form and dated it July 8, 2004. The agent stated he did not notice this at the

11  time but the insured could not have signed the document on July 8, 2004 because the

12  agent had not prepared the document at that time. The agent then submitted a payment

13  document that listed the insured paid $382.82 on July 9, 2004 at 10:01 A.M. The

14  agent signed this document.

15         g.      The agent stated he became aware of the fire when he saw it on the

16  news on Saturday, July 10, 2004. The agent stated that the insured came in on July 23,

17  2004 and made his payments current on the policy. They did not discuss the fire at that

18  time.

19         h.      The agent believes there should be coverage for the insured for this

20  loss pertaining to the coverage dates. The agent believes that the insured believed they

21  had coverage for the loss and it was the agent's and underwriting mistakes that caused

22  the policy to go out of force. The agent stated he tried several times to start up the

23  insured's policy when it went out of force.

24      17.    On August 17, 2004 I reviewed records that pertain to the effect

25  Continental Spices Convenience Store has on interstate commerce. According to the

26  insurance investigator, the building that houses Continental Spices Convenience Store is

27  owned by Wells Fargo Bank. Wells Fargo is a diversified financial services company,

28  providing banking, insurance, investments, mortgage and consumer finance from over

COMPLAINT/AKRAM — 12

1  5,900 stores, the internet and other distribution channels across North America and
2  elsewhere internationally. The location is managed by Windermere Realty, which is a
3  Real Estate Sales and Property Management Corporation that employs over 6,000
4  agents in over 200 offices nationwide. Z.A.Trading Corporation leases this store and
5  pays $1,206/month to Windermere Realty. Z.A.Trading Corporation, which owns and
6  is "doing business as" DBA Continental Spices Convenience Store grossed over
7  $1,900,000 in nationwide sales for fiscal year 2003 according to tax records. The
8  Continental Spices Convenience Store had average gross sales of between $7,000 -
9  $13,000 month prior to the fire. Most of the products that were sold by Continental
10 Spices Convenience Store were purchased through Z.A. Trading Corporation. Z.A.
11 Trading Corporation purchased wholesale supplies from Canada, California, Texas and
12 other states and then sold them to Continental Spices Convenience Store in Everett and
13 Seattle. Z.A. Trading Corporation also sold wholesale merchandise to businesses
14 located in Atlanta, GA, Canada, California, Texas and other states throughout the
15 country.

16       18.     I have been advised by an Everett Police Detective that he personally
17 drove by the residence located at 9324 7th Avenue Southeast, Everett, Washington and
18 he provided the following description: a two story (split level) single family residence,
19 tan in color with the numbers 9324 affixed to the front of the house. The residence is
20 on an "L" shaped lot with a large shop and a trailer on the property. The house and
21 outbuildings are situated off of 7th Avenue southeast and are accessed by a long
22 driveway. The house faces east with the outbuilding and trailer to the north of the main
23 residence. The property is fenced along the west side with a wooden privacy fence.

24       24.     Based on the foregoing, I believe there is probable cause for the issuance
25 of a search warrant to search the residence and trailer of MIRZA M. AKRAM for
26 evidence of a violation of Title 18 U.S.C. § 844(i). This evidence may include:

27                       a.  Gasoline containers;

28

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101
(206) 553-7970

1          b.  Financial documents pertaining to Continental Spices

2    Convenience Store and Z.A. Trading Corporation;

3          c.  Telephone toll records; and

4          d.  Spray paint cans.

5

6
                              _____
7                              CHRISTOPHER TAYLOR, Complainant
                              Special Agent, ATF
8

9    Affidavit sworn to before me and subscribed in my presence, this ___19___ day

10   of August, 2004.

11

12                             _____
13                             MONICA J. BENTON
                              United States Magistrate Judge
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101
(206) 553-7970